

SEALED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

FELONY

**INDICTMENT FOR CONSPIRACY**
**TO COMMIT MAIL FRAUD AND MAIL FRAUD**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.** 22-22 |
| **v.** | * | **SECTION:** SECT.H MAG.3 |
| **JOSEPH BREWTON** | * | **VIOLATIONS: 18 U.S.C. § 371** |
| **DAVID BROWN** | | 18 U.S.C. § 1341 |
| **GILDA HENDERSON** | * | 18 U.S.C. § 2 |
| **LATRELL JOHNSON** | | |
| **LARRY MARTIN PICOU** | * | **FILED UNDER SEAL** |
| **FLORENCE RANDLE** | | |
|   a/k/a "Florence Diggs" | * | |
|   a/k/a "Florence Wheaten" | | |
|   a/k/a "Florence Sims" | * | |
|   a/k/a "Wankie" | | |
|   a/k/a "Winkie" | * | |
| **STACIE WHEATEN** | | |
|   a/k/a "Stacy Wheaten" | * | |
|   a/k/a "Stacie Wheaton" | | |

                *       *       *

The Grand Jury charges that:

## COUNT 1
(Conspiracy to Commit Mail Fraud)

**A.    AT ALL TIMES MATERIAL HEREIN:**

1.    Defendants **JOSEPH BREWTON ("BREWTON"), DAVID BROWN ("BROWN"), GILDA HENDERSON ("HENDERSON"), LATRELL JOHNSON ("JOHNSON"), LARRY MARTIN PICOU ("PICOU"), FLORENCE RANDLE a/k/a "Florence Diggs," a/k/a "Florence Wheaten," a/k/a "Florence Sims," a/k/a "Wankie," a/k/a "Winkie," ("F. RANDLE"),** and **STACIE WHEATEN a/k/a "Stacy Wheaten," a/k/a "Stacie Wheaton," ("S. WHEATEN")** were involved in staged motor vehicle collisions with tractor-trailers occurring in the New Orleans area.

2.    **BREWTON** resided in Houma, Louisiana.

3.    **BROWN** and **HENDERSON** resided in Morgan City, Louisiana.

4.    **JOHNSON** resided in New Orleans, Louisiana.

5.    **F. RANDLE** and **PICOU** resided in Gibson, Louisiana.

6.    **S. WHEATEN** resided in Atlanta, Georgia.

7.    **F. RANDLE, BREWTON, BROWN, S. WHEATEN,** Henry Randle ("H. Randle"), Ryan Wheaten ("R. Wheaten"), John Diggs ("J. Diggs"), Lois Russell ("Russell"), Dakota Diggs ("D. Diggs"), and James Williams a/k/a Curtis Williams ("C. Williams") were family members.

8.    A "slammer" was an individual who drove a vehicle and intentionally collided with 18-wheeler tractor-trailers in order to stage accidents.

9.    A "spotter" was an individual who would follow a slammer in a separate vehicle and would pick up the slammer after the staged collision in order to flee the scene and evade detection.

10.     Damian Labeaud ("Labeaud") and Roderick Hickman ("Hickman") served as both slammers and spotters, and Mario Solomon ("Solomon") served as a spotter.

11.     Passenger A died in an unrelated auto accident on or about July 22, 2018.

12.     Attorneys A, B, C, and D were personal injury attorneys licensed to practice in Louisiana who worked for the same law firm in New Orleans.

13.     The following intersections were located in the Eastern District of Louisiana: Chef Menteur Highway and Downman Road; Calliope Street and U.S. Highway 90; and Chickasaw Street and Louisa Street.

14.     HMNG Trucking, LLC ("HMNG Trucking") was an interstate commercial trucking company headquartered in Georgia.

15.     Truck Driver A worked for HMNG Trucking and resided in Georgia.

16.     HMNG Trucking was insured by Security National Insurance Company ("Security"), which maintained offices throughout the United States.

17.     B.A.H. Express, Inc. ("B.A.H. Express") was an interstate transportation company and distribution center headquartered in Conley, Georgia.

18.     Truck Driver B worked for B.A.H. Express and resided in Alabama.

19.     B.A.H. Express was insured by Westfield Insurance Company ("Westfield"), which maintained a principal place of business in Ohio.

20.     Stevie B's Trucking, LLC ("Stevie B's Trucking") was an interstate commercial trucking company headquartered in Mandeville, Louisiana.

21.     Truck Driver C worked for Stevie B's Trucking and resided in Harvey, Louisiana.

22.     Stevie B's Trucking was insured by National Union Fire Insurance Company of Pittsburgh, PA ("NUFIC"), which maintained a principal place of business in New York.

23.     Financial Indemnity Company maintained an office in Dallas, Texas and insured a white-colored 2004 Ford F-150 truck ("Ford F-150") that belonged to **F. RANDLE** on or about May 17, 2017.

24.     Tennessee Commercial Warehouse, Inc. ("TCW") was an interstate commercial trucking company headquartered in Nashville, Tennessee.

25.     Truck Driver D worked for TCW and resided in Mississippi.

26.     TCW was insured by Zurich American Insurance Company ("Zurich"), which maintained offices throughout the United States and Canada.

27.     Gallagher Bassett ("Gallagher"), which maintained an office in Clinton, Ohio, served as the Third-Party Administrator that handled claims for Zurich.

28.     Southern Refrigerated Transport, Inc. ("SRT") was an interstate commercial trucking company headquartered in Texarkana, Arkansas.

29.     Covenant Transportation Group ("Covenant"), headquartered in Chattanooga, Tennessee, was the parent company that owned SRT.

**B.     THE CONSPIRACY:**

Beginning at a time unknown, and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **BREWTON**, **BROWN**, **HENDERSON**, **JOHNSON**, **PICOU**, **F. RANDLE**, **S. WHEATEN**, and others known and unknown to the Grand Jury, willfully and knowingly did combine, conspire, confederate, and agree to devise a scheme and artifice to defraud and to obtain money and property from insurance companies, commercial carriers, and trucking companies by means of materially false and fraudulent pretenses, representations, and promises, and willfully cause mail matter to be delivered by the United States Postal Service ("USPS") and interstate commercial carriers for the purpose

of executing or attempting to execute the scheme and artifice to defraud set forth below, in violation of Title 18, United States Code, Section 1341.

C.   **SCHEME AND ARTIFICE TO DEFRAUD**:

1.      It was part of the scheme and artifice to defraud that, beginning on a date unknown, but in or around 2015, Labeaud and Hickman began staging automobile collisions together in exchange for payment from the law firm of Attorneys A, B, C, and D.

2.      It was further part of the scheme and artifice to defraud that Labeaud and Hickman staged automobile collisions so that passengers could bring fraudulent personal injury lawsuits that were filed by the law firm of Attorneys A, B, C, and D.

3.      It was further part of the scheme and artifice to defraud that, in August of 2015, Labeaud staged a collision with a tractor-trailer in New Orleans, Louisiana, in which **BREWTON** was a passenger ("**BREWTON's** August 2015 Collision"), and that **BREWTON** was in another collision with a tractor-trailer approximately one month later ("**BREWTON's** September 2015 Collision").

4.      It was further part of the scheme and artifice to defraud that Attorney C initially represented **BREWTON** in personal injury lawsuits in connection with **BREWTON's** August 2015 Collision and **BREWTON's** September 2015 Collision and provided **BREWTON** "advances on settlement" and loans through the law firm of Attorneys A, B, C and D.

5.      It was further part of the scheme and artifice to defraud that, during the time that Attorney C represented **BREWTON** in personal injury lawsuits in connection with **BREWTON's** August 2015 Collision and September 2015 Collision, **BREWTON** recruited passengers to participate in other motor vehicle collisions staged by Labeaud, Hickman, and Solomon, and

instructed the passengers to go to the law firm of Attorneys A, B, C, and D for the purpose of filing fraudulent lawsuits.

6.      It was further part of the scheme and artifice to defraud that **BREWTON** introduced **F. RANDLE** and **S. WHEATEN** to Labeaud.

7.      It was further part of the scheme and artifice to defraud that, in April of 2016, Labeaud staged a collision with a tractor-trailer in New Orleans, Louisiana, in which **F. RANDLE** was a passenger ("**F. RANDLE's** April 2016 Collision") and that **BREWTON** rode with Hickman in the spotter vehicle.

8.      It was further part of the scheme and artifice to defraud that, after **F. RANDLE's** April 2016 Collision, **BREWTON**, Hickman, and Labeaud referred **F. RANDLE** and the other passengers to the law firm of Attorneys A, B, C, and D, but **F. RANDLE** ultimately hired attorney Danny Patrick Keating, Jr. ("Keating") to file a personal injury lawsuit.

9.      It was further part of the scheme and artifice to defraud that Progressive paid at least $256,900.00 in connection with **F. RANDLE's** April 2016 Collision.

10.     It was further part of the scheme and artifice to defraud that **S. WHEATEN** and **F. RANDLE** agreed to pay Labeaud for staging collisions for passengers that did not go to the law firm of Attorneys A, B, C, and D.

11.     It was further part of the scheme and artifice to defraud that **S. WHEATEN** told Keating that Labeaud was staging accidents for the Law Firm of Attorneys A, B, C, and D, and offered to introduce Keating to Labeaud so that Labeaud could also stage accidents for Keating.

12.     It was further part of the scheme and artifice to defraud that **F. RANDLE** and **S. WHEATEN** introduced Labeaud to Keating at a restaurant in New Orleans, wherein Keating agreed to pay Labeaud for collisions.

13.     It was further part of the scheme and artifice to defraud that **F. RANDLE** recruited passengers to participate in staged collisions so that they could bring fraudulent lawsuits filed by Keating, and that **S. WHEATEN** helped to organize these staged collisions by coordinating with Labeaud, Keating, and others.

14.     It was further part of the scheme and artifice to defraud that Keating paid **F. RANDLE** and **S. WHEATEN** to refer passengers of staged collisions to him and disguised these payments as "advances" on settlements for lawsuits, including for the lawsuit regarding **F. RANDLE's** April 2016 Collision.

15.     It was further part of the scheme and artifice to defraud that **BREWTON**, **F. RANDLE**, and **S. WHEATEN** directed passengers on how to commit the staged collision scheme.

16.     It was further part of the scheme and artifice to defraud that the passengers who coordinated with **BREWTON**, **F. RANDLE**, and **S. WHEATEN** would ride in a vehicle while Labeaud or Hickman intentionally collided with a tractor-trailer.

17.     It was further part of the scheme and artifice to defraud that the passengers in these staged collisions, such as **BROWN, HENDERSON, JOHNSON**, and **PICOU**, would then make false police reports, file false lawsuits, provide false deposition testimony, and/or seek unnecessary medical treatment, and cause mailings in furtherance of their fraudulent claims.

**D.     OVERT ACTS:**

In order to execute the scheme, and to accomplish the purposes of the scheme, **BREWTON, BROWN, HENDERSON, JOHNSON, PICOU, F. RANDLE**, and **S. WHEATEN** committed and caused others to commit the following acts, among others, in the Eastern District of Louisiana and elsewhere, as described in the following paragraphs:

## The March 27, 2017, Staged Collision (Mercury Mountaineer)

The below listed Overt Acts all occurred on or about March 27, 2017, unless noted otherwise.

1.      Between on or about March 25, 2017 and on or about March 27, 2017, **BREWTON** contacted J. Diggs, Tanya Givens ("Givens"), Russell, and C. Williams to see if they were interested in staging an automobile collision, and J. Diggs, Givens, Russell, and C. Williams agreed.

2.      On or about March 26, 2017, Givens paid **BREWTON** the sum of approximately $250.00 for arranging the staged automobile accident.

3.      On or about March 27, 2017, **BREWTON** drove J. Diggs, Givens, Russell, and C. Williams in a 2007 Mercury Mountaineer ("Mountaineer") from the vicinity of Gibson, Louisiana to New Orleans, Louisiana, for the purpose of staging an automobile accident with a tractor-trailer in order to obtain money through fraud.

4.      On or about March 27, 2017, J. Diggs, Givens, Russell, and C. Williams met with Labeaud and Hickman, and agreed to allow Hickman to drive the Mountaineer.

5.      At approximately 1:05 P.M., Hickman intentionally collided the Mountaineer with a 2017 Freightliner tractor-trailer owned by HMNG Trucking that was traveling on Chef Menteur Highway near its intersection with Downman Road, and then Hickman left the scene in Labeaud's car.  Russell then got behind the wheel of the Mountaineer to make it appear that she had been driving at the time of the staged accident.

6.      After the collision, **BREWTON** and Labeaud advised J. Diggs, Givens, Russell, and C. Williams to go with them to the law firm of Attorneys A, B, C, and D to obtain legal representation in connection with the staged collision.

7.      Russell, C. Williams, Givens, and J. Diggs initially hired Attorney A to represent them in connection with the staged collision.

8.      On or about March 27, 2017, **BREWTON** received a check from the law firm of Attorneys A, B, C, and D in the amount of approximately $500.00.

9.      On or about November 2, 2017, Keating filed a personal injury lawsuit in Civil District Court for the Parish of Orleans, State of Louisiana ("CDC") on behalf of J. Diggs and Russell ("J. Diggs/Russell Lawsuit"), and on or about February 9, 2018, Attorney A filed a personal injury lawsuit in CDC on behalf of C. Williams and Givens ("C. Williams/Givens Lawsuit"). Both lawsuits contained false allegations about the March 27, 2017 collision.

10.     On or about April 10, 2019, **BREWTON**'s actions caused counsel for HMNG Trucking, Security, and Truck Driver A to mail an envelope via USPS to Keating, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $140,000.00 for J. Diggs.

11.     On or about April 18, 2019, **BREWTON**'s actions caused counsel for HMNG Trucking, Security, and Truck Driver A to mail an envelope via USPS to Keating, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $17,500.00 for Russell.

12.     On or about April 18, 2019, **BREWTON**'s actions caused counsel for HMNG Trucking, Security, and Truck Driver A to mail an envelope via USPS to Attorney A, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $115,000.00 for Williams.

**The May 11, 2017 Staged Collision (Ford Expedition)**

The below listed Overt Acts all occurred on or about May 11, 2017, unless noted otherwise.

13.     Prior to May 11, 2017, **BREWTON** and **BROWN** asked **HENDERSON** if she was interested in participating in a staged automobile collision in New Orleans, Louisiana, to make some money and **HENDERSON** responded affirmatively.

14.     Prior to May 11, 2017, Solomon asked **JOHNSON** if she was interested in participating in a staged automobile collision with him and Labeaud to obtain insurance proceeds, and **JOHNSON** agreed to participate.

15.     In the morning, **BROWN** drove **HENDERSON** and **PICOU** in a Ford Expedition ("the Expedition") from the areas of Morgan City and Gibson, Louisiana to New Orleans, Louisiana, to meet with Labeaud, Solomon, and **JOHNSON**.

16.     **BROWN, HENDERSON, JOHNSON**, and **PICOU** agreed to serve as passengers and allow Labeaud to drive the Expedition to intentionally cause a collision with a tractor-trailer.

17.     At around 10 A.M., at the intersection of Chef Menteur Highway and Downman Road, Labeaud intentionally collided the Expedition with a 2013 International tractor-trailer owned by B.A.H. Express and driven by Truck Driver B.  Labeaud then fled the scene in Solomon's silver-colored Chevy Silverado ("Silverado").

18.     After the staged collision, **BROWN** got into the driver's seat and falsely reported to NOPD officers that he had been driving the Expedition and that Truck Driver B had caused the collision.

19.     **BREWTON** directed **BROWN, HENDERSON, JOHNSON,** and **PICOU** to go to the law firm of Attorneys A, B, C, and D to discuss legal representation after the false police report was made.

20.     Subsequently, **BROWN, JOHNSON,** and **PICOU** switched their legal representation from the Law Firm of Attorneys A, B, C, and D to Keating, who filed a personal injury lawsuit in CDC on their behalf on or about May 9, 2018 ("Brown/Picou/Johnson Lawsuit"). This lawsuit contained false allegations about the May 11, 2017 collision.

21.     On or about May 11, 2018, Attorney B filed a personal injury lawsuit on behalf of **HENDERSON** in the CDC ("Henderson Lawsuit"), which contained false allegations about the May 11, 2017 collision.

22.     Attorney B referred **HENDERSON** to doctors and medical providers, and **HENDERSON** underwent surgery on her back, even though she was not injured in the May 11, 2017 staged collision.

23.     **BROWN, JOHNSON,** and **PICOU** received advances on their settlements.

24.     In July of 2019, **BROWN, HENDERSON, JOHNSON,** and **PICOU** gave false deposition testimony regarding the May 11, 2017 staged collision.

25.     On or about December 3, 2018, **BREWTON, BROWN, HENDERSON, JOHNSON,** and **PICOU** caused Westfield to mail a settlement check for **JOHNSON** in the amount of approximately $7,000.00 via USPS from Ohio to counsel for Westfield, *** Poydras Street, New Orleans, LA 70130.

26.     On or about January 17, 2019, **BREWTON, BROWN, HENDERSON, JOHNSON,** and **PICOU** caused Westfield to mail a settlement check for **PICOU** in the amount

of approximately $130,000.00 via FedEx from Ohio to counsel for Westfield, *** Poydras Street, New Orleans, LA 70130.

### The May 17, 2017, Staged Collisions (Ford F-150 and Durango)

The below listed Overt Acts all occurred on or about May 17, 2017, unless noted otherwise.

27.     On or about May 16, 2017, **F. RANDLE** cashed a check from Keating, dated May 16, 2017, referencing "client advance on settlement" in the amount of approximately $800.00.

28.     On or about May 16, 2017, **F. RANDLE** asked Marvel Francois ("Francois") and Troy Smith ("Smith") if they were each interested in staging an automobile accident in or around the next day in order to obtain money through fraud, and they agreed to do so.

29.     On or about May 16, 2017, **S. WHEATEN** texted Labeaud, "Can you do two tomorrow[?]"

30.     On or about May 16, 2017, Labeaud replied to **S. WHEATEN**, "I need 25! It's my just me! N I'm kockin off 15[.]"

31.     On or about May 16, 2017, **S. WHEATEN** sent Labeaud texts that stated, "Call me[,]" "Lawyer got u plus[,]" and "I'm talking about two different."

32.     At some point that morning, individuals including **F. RANDLE**, **S. WHEATEN**, D. Diggs, H. Randle, and R. Wheaten met at the home of **F. RANDLE** and H. Randle in Gibson, Louisiana.

33.     **F. RANDLE** instructed D. Diggs, H. Randle, and R. Wheaten to ride in the Ford F-150 to a parking lot in New Orleans, while **F. RANDLE**, **S. WHEATEN**, and Givens travelled separately to New Orleans.

34.     Francois, Bernell Gale ("Gale"), Smith, and Passenger A traveled from the areas of Gibson/Houma, Louisiana to the same parking lot in New Orleans, Louisiana in the Durango.

12

35.  **S. WHEATEN** texted Labeaud, "omw[,]" and then, "Working on the roads we rolling now[.]"

36.  In the parking lot, it was agreed that Labeaud would stage a collision first with D. Diggs, H. Randle, and R. Wheaten in the Ford F-150 and then he would stage a collision with Francois, Gale, Smith, and Passenger A in the Durango.

37.  At approximately 1:28 P.M., Labeaud, while driving the Ford F-150 on Calliope Street, intentionally collided with a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking and driven by Truck Driver C that was merging onto US Highway 90 Eastbound.

38.  After impact, Labeaud was picked up by Solomon in the Silverado, and H. Randle got into the driver's seat of the Ford F-150 to make it appear that H. Randle had been driving at the time of the collision.

39.  At approximately 1:35 P.M., **S. WHEATEN** texted Labeaud, "Call me."

40.  After the collision with the Ford F-150, Labeaud drove Francois, Gale, Smith, and Passenger A in the Durango, and at approximately 1:57 P.M., collided with a 2017 Peterbilt tractor-trailer operated by TCW and driven by Truck Driver D that was at the intersection of Chickasaw Street and Louisa Street.

41.  After the second staged accident, Labeaud exited the Durango and Francois got behind the wheel of the Durango to make it appear that Francois had been driving at the time of the collision.

42.  At approximately 2:03 P.M., **S. WHEATEN** cashed a check from Keating, dated May 17, 2017, referencing "client advance on settlement," in the amount of approximately $4,500.00 at a Whitney Bank in New Orleans.

43.     After the staged Ford F-150 collision, **F. RANDLE** and **S. WHEATEN** instructed D. Diggs, H. Randle, and R. Wheaten to meet **F. RANDLE** and **S. WHEATEN** at Keating's office to discuss legal representation.

44.     After the staged Durango collision, **F. RANDLE** and **S. WHEATEN** instructed Francois, Gale, Smith, and Passenger A to meet with Keating at a coffee shop on Canal Street to discuss legal representation.

45.     That evening, **S. WHEATEN** texted Labeaud, "Are you good friend.  Just making sure[.]"

46.     On or about March 28, 2018, Attorney A filed a personal injury lawsuit on behalf of D. Diggs in First City Court of the City of New Orleans ("D. Diggs Lawsuit"), on or about May 17, 2018 Keating filed a personal injury lawsuit in CDC on behalf of R. Wheaten ("R. Wheaten Lawsuit"), and on or about May 17, 2018, an attorney known to the Grand Jury filed a personal injury lawsuit on behalf of H. Randle ("H. Randle Lawsuit").  All three lawsuits contained false allegations about the May 17, 2017 Ford F-150 collision.

47.     On or about May 17, 2018, Keating filed a personal injury lawsuit in CDC on behalf of Smith, Gale, and Passenger A ("Smith/Gale Lawsuit"), which contained false allegations about the May 17, 2017 Durango collision.

48.     On or about March 1, 2018, **F. RANDLE's** and **S. WHEATEN's** actions caused Keating's office to mail an envelope via USPS to Gallagher Basset [sic], P.O. Box 2934, Clinton, Iowa 52733, containing a settlement demand on behalf of client Gale, demanding approximately $28,769.00 in settlement.

49.     On or about June 5, 2018, **F. RANDLE's** and **S. WHEATEN's** actions caused Keating's office to mail an envelope via USPS to Truck Driver C, \*\*\* Myer, Jackson, Mississippi 39209, containing a copy of the Smith/Gale Lawsuit.

50.     On or about January 17, 2019, **F. RANDLE's** and **S. WHEATEN's** actions caused counsel for Stevie B's Trucking, NUFIC, and Truck Driver B to mail an envelope via USPS to the law firm of Attorneys A, B, C, and D, \*\*\*\* Canal Street, New Orleans, LA 70119, containing a check in the amount of approximately $5,000.00 for D. Diggs.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

The below listed Overt Acts all occurred on or about June 6, 2017, unless noted otherwise.

51.     On a date unknown but prior to June 6, 2017, **F. RANDLE** asked Smith if he knew anyone else who was interested in being involved in a staged automobile accident, and Smith recruited Lucinda Thomas ("Thomas") to serve as a passenger.

52.     At a time unknown, but on or about June 6, 2017, **F. RANDLE** informed Smith that Thomas could be in an accident that day, and Smith notified Thomas.

53.     Throughout the day, **S. WHEATEN** had phone contact with Labeaud, Keating, Smith, and **F. RANDLE**, and **F. RANDLE** had phone contact with Smith.

54.     Smith obtained instructions from **S. WHEATEN** and **F. RANDLE**, and then directed Thomas to drive her 2009 burgundy-colored Chevrolet Avalanche ("Avalanche") with Thomas, Mary Wade ("Wade"), Judy Williams ("J. Williams"), and Dashontae Young ("Young") from Houma, Louisiana, to a Burger King parking lot in New Orleans, Louisiana to meet Labeaud.

55.     That morning, **S. WHEATEN** texted Labeaud, "Birthday Avalanche at Burger King" and then, "wya [where you at]."

56.     At approximately 12:30 P.M., while driving the Avalanche on Chef Menteur Highway with Thomas, Wade, J. Williams, and Young in the vehicle, Labeaud intentionally collided with an SRT tractor-trailer.

57.     After impact, Thomas got behind the wheel of the Avalanche to make it appear that she had been driving at the time of the staged accident, and Labeaud fled the scene in Solomon's Silverado.

58.     Subsequently, Keating met with Labeaud, Thomas, Wade, J. Williams, and Young in order to discuss legal representation.

59.     On or about June 8, 2017, Keating wrote a check to **F. RANDLE** in the amount of approximately $800 with the memo line, "Client advance on settlement."

60.     On or about June 8, 2017, Keating wrote a check to **S. WHEATEN** in the amount of approximately $900 with the memo line, "Client advance on settlement."

61.     On or about March 6, 2018, Keating filed a personal injury lawsuit in CDC on behalf of J. Williams and Wade ("J. Williams/Wade Lawsuit") and on or about June 5, 2018, Keating filed a personal injury lawsuit in CDC on behalf of Thomas ("Thomas Lawsuit").  Both lawsuits contained false allegations about the June 6, 2017 collision.

62.     On or about December 19, 2017, **F. RANDLE's** and **S. WHEATEN's** actions caused counsel for Covenant to mail an envelope via FedEx to Keating, **** Holiday Drive, New Orleans, LA 70114, containing settlement documents and a check in the amount of approximately $20,000.00 for Young.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 2-4
(Mail Fraud)

**A.      AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.      THE OFFENSE:**

Beginning at a time unknown and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendant, **JOSEPH BREWTON**, with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

On or about the approximate dates listed below, in the Eastern District of Louisiana and elsewhere, **BREWTON**, for the purpose of executing or attempting to execute the aforesaid scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service and interstate commercial carriers, according to the directions thereon, the following mail matter:

| COUNT | DESCRIPTION OF MAILING – March 27, 2017 Staged Collision (Mountaineer) |
|-------|------------------------------------------------------------------------|
| 2 | April 10, 2019, counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Keating, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the approximate amount of $140,000.00 for J. Diggs. |
| 3 | April 18, 2019, counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Keating, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the approximate amount of $17,500.00 for Russell. |

| COUNT | DESCRIPTION OF MAILING – March 27, 2017 Staged Collision (Mountaineer) |
|-------|------------------------------------------------------------------------|
| 4 | April 18, 2019, counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Attorney A, **** Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the approximate amount of $115,000.00 for Williams. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## COUNT 5-6
(Mail Fraud)

**A.** **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.** **THE OFFENSE:**

Beginning at a time unknown but in or around May of 2017 and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **JOSEPH BREWTON ("BREWTON"), DAVID BROWN ("BROWN"), GILDA HENDERSON ("HENDERSON"), LATRELL JOHNSON ("JOHNSON"),** and **LARRY MARTIN PICOU ("PICOU")** with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

On or about the approximate dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **BREWTON, BROWN, HENDERSON, JOHNSON, PICOU,** for the purpose of executing or attempting to execute the aforesaid scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service and interstate commercial carriers, according to the directions thereon, the following mail matter:

| COUNT | DESCRIPTION OF MAILING – May 11, 2017 Staged Collision (Expedition) |
|---|---|
| 5 | December 3, 2018, Westfield mailed a settlement check for **JOHNSON** in the approximate amount of $7,000.00 via USPS from Ohio to counsel for Westfield, *** Poydras Street, New Orleans, LA 70130. |
| 6 | January 17, 2019, Westfield mailed a settlement check for **PICOU** in the approximate amount of $130,000.00 via FedEx from Ohio to counsel for Westfield, *** Poydras Street, New Orleans, LA 70130. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

### COUNT 7-10
(Mail Fraud)

**A.**   **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A, C, and D of Count 1 are hereby re-alleged and incorporated herein by reference.

**B.**   **THE OFFENSE:**

Beginning at a time unknown and continuing until the date of this Indictment, in the Eastern District of Louisiana and elsewhere, the defendants, **FLORENCE RANDLE a/k/a "Florence Diggs," a/k/a "Florence Wheaten," a/k/a "Florence Sims," a/k/a "Wankie," a/k/a "Winkie,"** and **STACIE WHEATEN a/k/a "Stacy Wheaten," a/k/a "Stacie Wheaton,"** with the intent to defraud, devised and willfully participated in, with knowledge of its fraudulent nature, the above-described scheme and artifice to defraud and obtain money and property by materially false and fraudulent pretenses, representations, and promises.

On or about the approximate dates listed below, in the Eastern District of Louisiana and elsewhere, the defendants, **F. RANDLE** and **S. WHEATEN**, for the purpose of executing or attempting to execute the aforesaid scheme and artifice to defraud, did knowingly cause to be delivered by the United States Postal Service and interstate commercial carriers, according to the directions thereon, the following mail matter:

| COUNT | DESCRIPTION OF MAILING – May 17, 2017 Staged Collision (Durango) |
|-------|------------------------------------------------------------------|
| 7 | March 1, 2018, Keating's office mailed an envelope via USPS to Gallagher Basset [sic], P.O. Box 2934, Clinton, Iowa 52733, containing a settlement demand on behalf of client Gale, demanding approximately $28,769.00 in settlement. |
| 8 | June 5, 2018, Keating's office mailed an envelope via USPS to Truck Driver C, *** Myer, Jackson, Mississippi 39209, containing a copy of the Smith/Gale Lawsuit. |

| COUNT | DESCRIPTION OF MAILING – May 17, 2017 Staged Collision (Ford F-150) |
|-------|--------------------------------------------------------------------|
| 9 | January 17, 2019, counsel for Stevie B's Trucking, NUFIC, and Truck Driver B mailed an envelope via USPS to the law firm of Attorneys A, B, C, and D, **** Canal Street, New Orleans, LA 70119, containing a check in the approximate amount of $5,000.00 for D. Diggs. |

| COUNT | DESCRIPTION OF MAILING – June 6, 2017 Staged Collision (Avalanche) |
|-------|-------------------------------------------------------------------|
| 10 | December 19, 2017, counsel for Covenant mailed an envelope via FedEx to Keating, **** Holiday Drive, New Orleans, LA 70114, containing settlement documents and a check in the approximate amount of $20,000.00 for Young. |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## NOTICE OF FORFEITURE

1.      The allegations of Counts 1 through 10 are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.      As a result of the offenses alleged in Counts 1 through 10, the defendants, **JOSEPH BREWTON, DAVID BROWN, GILDA HENDERSON, LATRELL JOHNSON, LARRY MARTIN PICOU, FLORENCE RANDLE a/k/a "Florence Diggs," a/k/a "Florence Wheaten," a/k/a "Florence Sims," a/k/a "Wankie," a/k/a "Winkie,"** and **STACIE WHEATEN a/k/a "Stacy Wheaten," a/k/a "Stacie Wheaton,"** shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, any property, real or personal, involved in, used, or intended to be used to commit

20


Case 2:22-cr-00022-JTM-DMD  Document 1  Filed 02/04/22  Page 21 of 22

or to facilitate the commission of the offenses, and any property traceable to such property; and any property, real or personal, constituting or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses, and any property traceable to such property.

3.     If any of the above-described property, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third person;

      c.     has been placed beyond the jurisdiction of the Court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendants up to the value of said property.

A TRUE BILL:

FOREPERSON

DUANE A. EVANS
UNITED STATES ATTORNEY

MARIA M. CARBONI
BRIAN M. KLEBBA
EDWARD J. RIVERA
BRANDON S. LONG
Assistant United States Attorneys

New Orleans, Louisiana
February 4, 2022

21

FORM OBD-34

No. _____

## UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

**JOSEPH BREWTON, DAVID BROWN, GILDA HENDERSON, LATRELL JOHNSON, LARRY MARTIN PICOU, FLORENCE RANDLE a/k/a "Florence Diggs," "Florence Wheaten," "Florence Sims," "Wankie," "Winkie," and STACIE WHEATEN a/k/a "Stacy Wheaten," "Stacie Wheaton"**

## INDICTMENT

## FOR CONSPIRACY TO COMMIT MAIL FRAUD AND MAIL FRAUD

**VIOLATIONS:**   18 U.S.C. § 371
                  18 U.S.C. § 1341
                  18 U.S.C. § 2

_____

_____

Filed in open court this _____ day of _____

_____ A.D. 2022.

_____
                                                          *Clerk*

Bail, $ _____

_____
**MARIA M. CARBONI**
**Assistant United States Attorney**