UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 22-22 |
| v. | * | SECTION: "H" |
| JOSEPH BREWTON | * | |
| | * | |

\*   \*   \*

## FACTUAL BASIS

Should this matter have gone to trial, the Government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the Government in Count 1 of the Indictment against the defendant, **JOSEPH BREWTON ("BREWTON")**, charging him with a violation of Title 18, United States Code, Section 371, namely, conspiracy to commit mail fraud. The Defendant, along with his co-conspirators and others, beginning at a time unknown and continuing through the present, in the Eastern District of Louisiana, and elsewhere, conspired to commit mail fraud in connection with staged automobile collisions, including collisions that occurred on or about March 27, 2017 and on or about May 11, 2017.

If this case had proceeded to trial, the Government would present evidence that, in or around 2015, Damien Labeaud ("Labeaud") and Roderick Hickman ("Hickman") began staging automobile collisions with 18-wheeler tractor-trailers together in exchange for payment from the law firm of Attorneys A, B, C, and D. Later, Labeaud also began working with Mario Solomon ("Solomon"), who would follow Labeaud in a separate vehicle and would pick up Labeaud after the staged accidents in order to flee the scene and evade detection.

On or about August 31, 2015, Labeaud staged a collision with a tractor-trailer in New

AUSA
Defendant
Defense Counsel

Orleans, Louisiana, in which **BREWTON** was a passenger, and **BREWTON** hired the law firm of Attorneys A, B, C, and D to represent him in a fraudulent personal injury lawsuit stemming from this collision and other matters.

**BREWTON** also recruited family members and friends to serve as passengers in other staged motor vehicle collisions and instructed the passengers to go to the law firm of Attorneys A, B, C, and D for the purpose of filing fraudulent lawsuits. **BREWTON** directed these passengers on how to commit the staged collision scheme. Additionally, **BREWTON** introduced his sister Florence Randle ("F. Randle") and his niece Stacie Wheaten ("S. Wheaten") to Labeaud. The Government would present evidence that, in or around 2017, F. Randle and S. Wheaten began recruiting passengers to participate in staged collisions with tractor-trailers and directing the passengers to use attorney Patrick Keating ("Keating") to file fraudulent personal injury lawsuits. Subsequently, **BREWTON** switched the legal representation for his 2015 collisions from the law firm of Attorneys A, B, C, and D to Keating and encouraged his family members and friends to do so as well.

### March 27, 2017 Staged Accident

On or about March 25, 2017, **BREWTON** contacted his sister Lois Russell ("Russell") and his friend Tanya Givens ("Givens") to see if they were interested in staging an automobile accident, and they agreed. **BREWTON** required Givens to pay him $250.00 in cash for arranging the collision. At trial, the Government would present testimony that, on or about March 27, 2017, F. Randle instructed John Diggs ("J. Diggs") to go to James Williams's ("Williams") home. At Williams's home, it was discussed that Russell, Williams, Givens and J. Diggs would go to New Orleans that day to stage an automobile accident with a tractor-trailer in order to obtain money through fraud. Russell, Williams, Givens, and J. Diggs then met up with **BREWTON**, who drove


AUSA
Defendant
Defense Counsel

them to New Orleans in a 2007 Mercury Mountaineer ("Mountaineer") owned by Russell. The Government would present testimonial evidence that Russell expressed doubt about whether she should participate in the staged collision, and **BREWTON** convinced her to follow through with the plan.

**BREWTON** brought Russell, Williams, Givens, and J. Diggs to New Orleans, Louisiana to meet with Hickman and Labeaud for the purpose of staging an automobile accident. At trial, the Government would present phone records showing that, between March 26 and 27, 2017, **BREWTON** exchanged numerous phone calls with co-conspirators, including Labeaud, Russell, Williams, Givens and F. Randle. For example, phone records show that, at approximately 10:07 A.M., **BREWTON** called the law firm of Attorneys A, B, C, and D. Phone records further show that, at approximately 10:37 A.M., Hickman texted Labeaud, "Outside."

In New Orleans, **BREWTON** exited the Mountaineer and Hickman got into the driver's seat. Hickman drove Russell, Williams, Givens, and J. Diggs to the area of Chef Menteur and Downman Road in the New Orleans East area. At approximately 1:05 P.M. that day, Hickman intentionally collided the Mountaineer into a 2017 Freightliner tractor-trailer owned by HMNG Trucking and operated by Truck Driver A. Hickman exited the Mountaineer after the collision and left the accident scene in Labeaud's car. The Government would present body camera footage showing that Russell falsely reported to the New Orleans Police Department ("NOPD") that she had been the driver of the Mountaineer and that the HMNG tractor-trailer struck her vehicle.

After the staged accident, **BREWTON** directed Russell, Givens, Williams, and J. Diggs to go to the law firm of Attorneys A, B, C, and D for their legal representation. **BREWTON** met Russell, Givens, Williams and J. Diggs at the law firm of Attorneys A, B, C, and D. **BREWTON** received a check from the law firm of Attorneys A, B, C, and D in the amount of approximately

3

AUSA
Defendant
Defense Counsel

$500.00, dated March 27, 2017. Later that day, **BREWTON** drove Russell, Givens, Williams and J. Diggs back to the Gibson area.

After agreeing to be represented by the law firm of Attorneys A, B, C, and D and receiving some medical treatment, Russell, Givens, and J. Diggs later retained Keating at **BREWTON's** encouragement. Givens later returned to the law firm of Attorneys A, B, C, and D for legal representation.

On or about November 2, 2017, Keating filed a personal injury lawsuit on behalf of J. Diggs, and subsequently added Russell ("J. Diggs/Russell Lawsuit"). On or about February 9, 2018, Attorney A filed a personal injury lawsuit on behalf of Williams and Givens ("the Williams/Givens Lawsuit"). These personal injury lawsuits sought monetary damages from Security, HMNG Trucking, and Progressive Security Insurance Company ("Progressive") in connection with the March 27, 2017 staged collision. The allegations in the J. Diggs/Russell Lawsuit and the Williams/Givens Lawsuit were false in that they did not contain information about how Hickman and Labeaud intentionally caused the collision, and they falsely alleged that Russell had been the driver of the Mountaineer during the collision. In support of their claims, Williams, Givens, Russell, and J. Diggs each provided false testimony in depositions and sought unnecessary medical care.

**BREWTON** and his co-conspirators caused mailings in furtherance of their scheme. On or about April 10, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via the United States Postal Service ("USPS") to Keating, located on Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $140,000.00 for Diggs. On or about April 18, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Keating, located on Canal Street, New Orleans,

AUSA
Defendant
Defense Counsel

LA 70119, containing settlement documents and a check in the amount of approximately $17,500.00 for Russell. On or about April 18, 2019, Counsel for HMNG Trucking, Security, and Truck Driver A mailed an envelope via USPS to Attorney A, located on Canal Street, New Orleans, LA 70119, containing settlement documents and a check in the amount of approximately $115,000.00 for Williams.

### The May 11, 2017 Staged Accident

Prior to May 11, 2017, **BREWTON** convinced his brother, David Brown ("Brown"), his sister Gilda Henderson ("Henderson"), and his friend Larry Martin Picou ("Picou") to participate in a staged automobile accident to make money. At trial, the Government would introduce phone records showing that, between on or about May 9, 2017 and May 11, 2017, **BREWTON** had phone contact with co-conspirators including Brown, Henderson, and Labeaud. According to phone records, Labeaud also spoke with Attorneys B and C and with Solomon during this time period.

**BREWTON** directed Brown to bring Picou and Henderson to New Orleans for the staged collision. On or about May 11, 2017, Brown drove Henderson and Picou to a parking lot in New Orleans in a Ford Expedition ("the Expedition"). In the parking lot, Brown, Henderson, and Picou met Labeaud, Solomon, and Latrell Johnson ("Johnson"), who were in Solomon's Chevy Silverado. In the parking lot, Labeaud got into the driver's seat of the Expedition.

The Government would present testimonial evidence that, at around 10 A.M., while driving the Expedition at the intersection of Chef Menteur Highway and Downman Road in New Orleans, Labeaud intentionally sped up and collided with a 2013 International tractor-trailer owned by B.A.H. Express and driven by Truck Driver B. The Government would present testimonial evidence that Truck Driver B was unaware that a collision had occurred, so Solomon flagged down

5


AUSA
Defendant
Defense Counsel

Truck Driver B, posing as a bystander, and falsely alleged that the tractor-trailer had struck a vehicle. The Government would introduce evidence that Labeaud fled the scene in Solomon's Silverado. The Government would introduce body camera footage showing that Brown falsely informed NOPD officers that he had been driving the Expedition and that the tractor-trailer had caused the collision.

The Government would present testimonial evidence that **BREWTON** directed the passengers to go to the law firm of Attorneys A, B, C, and D after the false police report was made. At the law firm of Attorneys A, B, C. and D, Brown, Henderson, and Picou filled out intake sheets in which they stated that they had heard about the law firm from "Damien" and in which Brown and Henderson listed **BREWTON** as an emergency contact. The Government would introduce documentary and testimonial evidence that Brown, Henderson, Picou, and Johnson initially hired the law firm of Attorneys A, B, C. and D.

Subsequently, Brown, Picou and Johnson switched their legal representation to Keating. The Government would present evidence that **BREWTON** encouraged Brown and Picou to switch their representation to Keating.

At trial, the Government would introduce records showing that Keating filed a petition on behalf of Brown, Picou, and Johnson in Orleans Parish Civil District Court ("CDC") on or about May 9, 2018 ("the Brown/Picou/Johnson Lawsuit"), and on or about May 11, 2018, the Law Firm of Attorneys A, B, C, and D filed a petition on behalf of Henderson in the CDC ("the Henderson Lawsuit"). These lawsuits were consolidated and removed to federal court in the Eastern District of Louisiana ("the Federal Lawsuit"). These lawsuits were personal injury lawsuits that sought damages from Truck Driver B, B.A.H. Express Inc., and Westfield, arising out of the May 11, 2017 collision. The allegations in the Brown/Picou/Johnson Lawsuit, the Henderson Lawsuit,

AUSA
Defendant
Defense Counsel

and the Federal Lawsuit were false in that they did not contain information about how Labeaud intentionally caused the May 11, 2017 collision and these lawsuits falsely alleged that Brown had been the driver of the Expedition during the collision. At trial, the Government would introduce deposition transcripts showing that Henderson, Brown, Picou, and Johnson gave false deposition testimony about the May 11, 2017 collision. Moreover, the Government would introduce testimonial and documentary evidence that Brown and Henderson agreed to undergo surgery to increase the value of their claims.

**BREWTON** and his co-conspirators caused mailings in furtherance of their scheme. At trial, the Government would introduce evidence that, on or about December 3, 2018, a Westfield employee mailed a settlement check for Johnson in the amount of approximately $7,000.00 via United States Postal Service ("USPS") from Ohio to Westfield's counsel in New Orleans, Louisiana to settle Johnson's false claims. The Government would also introduce records that, on or about January 17, 2019, a Westfield employee sent a settlement check for Picou in the amount of approximately $130,000.00 via FedEx from Ohio to Westfield's counsel in New Orleans, Louisiana to settle Picou's false claims.

### Conclusion

In sum, the Government's evidence would prove that **BREWTON** conspired to commit mail fraud by causing the aforementioned mailings in furtherance of a fraudulent scheme to seek monetary damages premised on falsehoods in connection with the March 27, 2017 and May 11, 2017 staged automobile collisions. The Government would present evidence that, through this scheme, **BREWTON** caused a loss of approximately $392,742.77.

### Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts

AUSA
Defendant
Defense Counsel

known by **BREWTON**, and/or the Government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by Brown.

The above facts come from an investigation conducted by, and would be proven at trial by, credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and other witnesses and from admissible tangible exhibits in the custody of the FBI, including phone records, text messages, police reports, medical records, body camera footage, bank records, deposition transcripts, and civil filings.

READ AND APPROVED:

_____
JOSEPH BREWTON
Defendant

_____
MICHAEL RASPANTI
Counsel for Defendant

_____
MARIA M. CARBONI
BRIAN KLEBBA
EDWARD RIVERA
Assistant United States Attorneys